1
2
3
4
5
6
7

8        **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,                    CASE NO. CV F 05-0594 LJO SMS

12              Plaintiff,          _____ **ORDER ON GOVERNMENT'S PERMANENT**
                                    **INJUNCTION AND SANCTIONS MOTIONS**
13        vs.                       (Docs. 122, 129.)

14   STEVE HEMPFLING, d/b/a
     FREE ENTERPRISE SOCIETY,
15
                Defendant.
16   _____/

17                              **INTRODUCTION**

18        Plaintiff United States of America ("Government") seeks to enjoin permanently defendant Steve

19   Hempfling ("Mr. Hempfling"), d/b/a Free Enterprise Society, to promote, organize and sell abusive tax

20   evasion and shelter products and to provide information on purchasers of such products.[1]   The

21   Government further seeks a default judgment against Mr. Hempfling as a discovery sanction for Mr.

22   Hempfling's disobedience of orders and failure to participate in discovery, including not appearing at

23   his deposition.  Mr. Hempfling fails to address the substantive merits of the Government's claims and

24   _____

25        [1]      Although the Government styles its papers as a summary judgment motion, this Court construes the
     Government's papers as a dispositive motion for a permanent injunction.  This Court carefully reviewed and considered all
26   arguments, points and authorities, declarations, depositions, exhibits, objections and other papers filed by the parties.
     Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did
27   not consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered the evidence it
     deemed admissible, material and appropriate for its ruling.
28

                                              1

effectively fails to challenge meaningfully the Government's requested relief in an apparent attempt to continue to obstruct a rightful decision on the merits of the Government's claims.    This Court considered the Government's permanent injunction and sanctions motions on the record and VACATES the March 17, 2007 hearing, pursuant to Local Rule 78-230(h).  As discussed in greater detail below, this Court IMPOSES a terminating discovery sanction and ENJOINS Mr. Hempfling to promote, organize and sell abusive tax shelters, plans or arrangements to incite attempts to violate internal revenue laws, to evade unlawfully assessment or collection of federal tax liabilities, or to claim improper tax refunds.

## BACKGROUND

### Mr. Hempfling And The Free Enterprise Society

Mr. Hempfling is identified as the Director and an original founder of the Free Enterprise Society in its promotional literature and on its website.  The Free Enterprise Society is located in Fresno. According to its Information Package & Freedom Catalog #10 ("Catalog #10"), the Free Enterprise Society was founded by Mr. Hempfling and two other men and that its purpose "is to restore the government to its constitutionally restricted activities and rid society of income tax."  The Free Enterprise Society has sponsored rallies at which Mr. Hempfling has been a speaker.  Through its Catalog #10 and website, the Free Enterprise Society sells products, including the "Reliance 2000 Program," "W4 Alternative Withholding Package," and "IRS Lien and Levy Package."

### The Reliance 2000 Program

According to Catalog #10, the Reliance 2000 Program is designed by the Free Enterprise Society and William J. Benson ("Mr. Benson"), coauthor of *The Law That Never Was*.  The Reliance 2000 Program comprises two volumes of *The Law That Never Was* and the "16th Amendment Reliance Package."  Catalog #10 sets out four steps for the Reliance 2000 Program:

1. "Read ***The Law That New Was*** **volumes I and II.  This is the research which explains the 16th Amendment, the supposed income tax amendment, was not ratified**."

2. "**The 16th Amendment Reliance Package,** developed by Bill Benson and Free Enterprise Society, contains information after the initial research was completed for *The Law That Never Was . . .*"

2

3.    "**Redress of Grievance Letter Package.** This contains the letters for you to send to the President, Congressman, your Senators and others for the 'redress of grievance' you have over the 16th Amendment issue. . . ."

4.    "**File a federal lawsuit** asking for an answer to the 16th Amendment question. **You want to follow the law if only you knew what the law was.** For more information on the above 4 steps, you should order seminars 9201 and/or 9202. Lawsuit price starts at 150.00 and is available only to current members of the Society & Civil Support Service." (Bold in original and added.)

The cover of the 16th Amendment Reliance Package, acquired by the Internal Revenue Service ("IRS"), states that it had been developed by the Free Enterprise Society and Constitutional Research Associates. The 16th Amendment Reliance Package's inside cover notes that it was copyrighted in 1992 by Mr. Benson of Constitutional Research Associates and published by the Free Enterprise Society.

The Government notes that Mr. Hempfling knows or has reason to know that his statements in the 16th Amendment Reliance Package about the 16th Amendment's validity and internal revenue laws are false or fraudulent. The Government points out that the 16th Amendment Reliance Package includes the decision *United States v. Benson*, 941 F.2d 598 (7th Cir. 1991), which held that Mr. Benson was not entitled to an evidentiary hearing on 16th Amendment's validity because the issue was "beyond review."

## The W4 Alternative Withholding Package

The W4 Alternative Withholding Package states: "Glaringly apparent is the fact that no statute exists which imposes a tax on the income of U.S. citizens living and domiciled in the United States. There is simply no statutory provision for this class of people to make returns or pay an income tax, unless of course, such person was acting as a withholding agent." In its own words, the W4 Alternative Withholding Package "attempts to correct the error in, or establish the correctness of, your withholding status for income tax purposes at the administrative level." The W4 Alternative Withholding Package continues: "Keep in mind that the W-4/DE-4 Form only applies to non-resident aliens, resident aliens, and U.S. Citizens working abroad."

The W4 Alternative Withholding Package instructs purchasers to: (1) prepare a notarized declaration that he/she is "an inhabitant and Citizen of the Republic of the State of [YOUR STATE],

3

and by virtue of Article 4, Section 2, Clause 1 of the Constitution for the United States of America, is also a United States citizen claiming to be a person not subject to withholding"; and (2) send the notarized declaration to the purchaser's employer to "correct" the purchaser's withholding status. The Civil Support Service of the Free Enterprise Society offers to prepare for $30 a custom "Withholding Declaration Package" and form letters to employers and the IRS and which the Government contends "falsely state that the purchaser is not subject to withholding."

### The IRS Lien And Levy Package

The IRS Lien and Levy Package states: "In conclusion the Congress did not provide that the Internal Revenue Service could assess for a Form 1040, or other kind of Form, kind of tax, hence the lien and levy are legally unenforceable." The IRS Lien and Levy Package further states falsely, as characterized by the Government: "Treasury Regulation section 301.6323(f)-1 only provides form, but not content of the notice as required by Internal Revenue Code Sections 6323(a), and 6323(f)(3). Therefore the federal tax lien is legally unenforceable as a matter of law according to Internal Revenue Manual No. 5700, Special Procedures, Section 5717.23." The Government notes that based on false statements and interpretations of the Internal Revenue Code, IRS Lien and Levy Package purchasers are instructed to demand releases of IRS levies and liens and administrative claims for "illegally assessed taxes" and to use form letters provided in the IRS Lien and Levy Package.

### Mr. Hempfling's Seminar Statements

The Government notes that through his website and California and Nevada seminars, Mr. Hempfling "hawks his books, packages, tapes, and compact disks with promises of how they will assist customers to successfully become and remain non-filers." The Government identifies Mr. Hempfling's "tax-scheme" products as previously-recorded seminars, and the Reliance 2000 and Alternative W4 Withholding packages. The Government notes that the products are marketed with promises of tax benefits, including reduction or elimination of withholdings. The Government points out that Greg Hill ("Mr. Hill"), the Legal Defense Director of the Free Enterprise Society, introduced Mr. Hempfling at a seminar by stating: "I've already done everything I'm asking you to do. What did I do? I quit filing."

### The Government's Claims

The Government proceeds on its operative first amended complaint under 26 U.S.C. §§ 7402(a)

4

1   and 7408 to enjoin Mr. Hempfling permanently to organize, promote and sell fraudulent tax schemes

2   which promote that the Sixteenth Amendment was never ratified, that IRS liens and levies are

3   unenforceable, and that no law requires filing of a W4 form.

### Mr. Hempfling's Initial Interlocutory Appeal

5        This Court's February 22, 2006 order denied Mr. Hempfling's motion to dismiss the

6   Government's first amended complaint.  On March 1, 2006, Mr. Hempfling filed his notice for an

7   interlocutory appeal of denial to dismiss the Government's first amended complaint.  This Court's

8   March 16, 2006 minute order noted that Mr. Hempfling had neither paid the required appeal fee nor

9   obtained necessary certification of an interlocutory appeal.  With its June 12, 2006 order, the Ninth

10  Circuit Court of Appeals dismissed Mr. Hempfling's appeal.

11       This Court's May 1, 2007 order struck 19 of 23 affirmative defenses in Mr. Hempfling's answer

12  to the Government's first amended complaint.

### Mr. Hempfling's Second Interlocutory Appeal

14       United States Magistrate Judge Sandra Snyder's ("Judge Snyder's") July 5, 2007 order struck

15  Mr. Hempfling's jury demand.  On August 2, 2007, Mr. Hempfling filed his notice for an interlocutory

16  appeal of striking his jury demand.  The Ninth Circuit's September 19, 2007 order directed Mr.

17  Hempfling to dismiss his appeal or to show cause why it should not be dismissed for lack of jurisdiction.

### Mr. Hempfling's Responses To The Government's Discovery

19       On October 22, 2007, the Government propounded its first sets of interrogatories and document

20  requests to Mr. Hempfling.  The Government's interrogatories sought names and addresses of purchasers

21  of Mr. Hempfling's alleged tax fraud schemes.  The Government's document requests sought plans and

22  arrangements of Mr. Hempfling's allege tax fraud schemes along with documents as to the creation and

23  finances of Free Enterprise Society, Mr. Hempfling's business name.

24       Defense counsel's November 9, 2007 letter informed the Government's counsel that Mr.

25  Hempfling would not respond to the Government's discovery due to the pending appeal of striking Mr.

26  Hempfling's jury demand.   Defense counsel wrote:

27           Further, it is our position that the District Court currently has no jurisdiction in
         this matter until and unless the 9th Circuit Court of Appeals remands the case for further
28       proceedings.   To this end, **my client intends to maintain a posture of non-**

**acquiescence** to the discovery requests until the District Court regains jurisdiction in this matter, after which you will need to serve these discovery requests again, if you still have such desire.  (Bold added.)

On January 4, 2008, the Government filed its motion to compel Mr. Hempfling's responses to the Government's interrogatories and document requests.  On January 14, 2008, the Ninth Circuit dismissed Mr. Hempfling's appeal of striking the jury demand.

Judge Snyder's January 30, 2008 order granted the Government's motion to compel and ordered Mr. Hempfling to serve his responses to the Government's interrogatories and document requests no later than February 4, 2008, the close of non-expert discovery.  Judge Snyder noted that Mr. Hempfling "has neither specifically objected nor responded to any of the discovery requests" and "completely failed to respond to the discovery requests" to relieve the Government of Local Rule 37-251's joint statement requirements.  Judge Snyder rejected Mr. Hempfling's "argument that the Court was or is without jurisdiction over the action" and found Mr. Hempfling's "position with respect to the effect of the appeal on jurisdiction was not substantially justified."  Of particular importance, Judge Snyder ruled:

> [Mr. Hempfling] has failed to respond to the discovery requests, has not objected to any of them, and has thus waived any objections to the discovery requests.  A failure to object to discovery requests within the time required constitutes a waiver of any objection. <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1473 (9th Cir. 1992).

On February 2, 2008, Mr. Hempfling served by electronic mail unsigned copies of his responses to the Government's interrogatories and document requests.

The Government's Interrogatory No. 1 seeks the identity of the person(s) responding to the first set of interrogatories.  Mr. Hempfling responded:

> Hempfling declines to answer and will invoke his absolute constitutionally protected fifth amendment right not to testify against himself on the grounds that he does not wish to provide any evidence or link in a chain of information that may possibly be used against him in a criminal prosecution.  Additionally see Hempfling's 4th affirmative defense in the amended answer.  Also see Internal Revenue Service *ABUSIVE TAX PROMOTIONS Student Guide* (Training 3118b-002 Re 8-2000) on file with the court.  Moreover, this response is incorporated in all the following responses whether or not indicated in the following responses.

The Government's Interrogatory No. 2 seeks the names and addresses of purchasers of the W4 Alternative Withholding Package, an alleged fraudulent tax avoidance scheme, from the Free Enterprise Society during 2000-2007.  Mr. Hempfling responded: "See response to interrogatory number 1.

1   Without waiving said absolute rights, Hempfling has no recollection of said persons or entities."

2       The Government's Interrogatory No. 7 seeks all facts concerning the relationship between Mr.

3   Hempfling and the Free Enterprise Society.  Mr. Hempfling responded: "See response to interrogatory

4   number 2.  Without waiving said absolute rights, see Free Enterprise Society Catalog pursuant to

5   government's request for production of documents and provided herewith as Exhibit 'A.'"

6       The Government's Document Request Nos. 1-3 seek all versions of three alleged fraudulent tax

7   scheme packages sold by the Free Enterprise Society – the W4 Alternative Withholding, the IRS Lien

8   and Levy and the Reliance 2000 packages.  Mr. Hempfling responded to the document requests:

9           Said documents to the extent they exist (which the defendant neither admits or denies)
            will be made available to the government at a neutral public place at which time the
10          government will be allowed to copy said documents.  Additionally, the act of forcing
            Hempfling to admit that said documents exist or are in his possession or that they are
11          authentic is sufficiently testimonial to warrant absolute 5th Amendment protection.  Also
            see Defendant's 4th affirmative defense in the amended answer.  Defendant proposes that
12          the parties meet at offices of the United States Attorney for the Eastern District of
            California, 2500 Tulare Street, Suite 4465, Fresno, California 93721 at 11:00 a.m., for
13          purposes of complying with the government's request for documents.  Moreover, the
            government is advised that production of documents to the extent they exist, which
14          defendant neither admits or denies, will be produced consistent with the invocation of
            defendant's constitutionally protected rights.  Again see Defendant's 4th affirmative
15          defense in the amended answer.

16       Mr. Hempfling has produced to the Government only the Free Enterprise Society's Catalog #10.

17                  **Mr. Hempfling's Failure To Appear At His Deposition**

18       On January 10, 2008, the Government served by electronic, overnight and U.S. mail a notice for

19   Mr. Hempfling's deposition for January 31, 2008 at 9 a.m. at the U.S. Attorney offices in Fresno.  By

20   a January 29, 2008 amended notice served by electronic and overnight mail, the Government reset the

21   deposition for 11 a.m. on January 31, 2008.  Mr. Hempfling did not appear for his deposition.

22       On January 31, 2008, Mr. Hempfling informed the Government's counsel by telephone that Mr.

23   Hempfling would answer the Government's interrogatories and document requests and would appear

24   for a February 4, 2008 deposition.

25       Mr. Hempfling appeared at his February 4, 2008 deposition without counsel to preclude his

26   deposition.  By telephone, Judge Snyder advised the Government's counsel to proceed with a F.R.Civ.P.

27   37(d) sanctions motion.

28       Mr. Hempfling neither sought a protective order nor served a privilege log as to the

7

1  Government's discovery.  The non-expert discovery deadline passed February 4, 2008.

2  **DISCUSSION**

3  As discussed below, Mr. Hempfling has obstructed the Government's legitimate discovery and

4  pursuit of its claims.  Mr. Hempfling faults the Government for an absence of evidence "to support its

5  wild claims" but ignores that his obstruction contributes to such purported absence.  Mr. Hempfling fails

6  to dispute the substantive merits of the Government's claims and makes frivolous claims that the

7  Government relies on inadmissible hearsay.  Certainly, the Government does not offer the tax shelters

8  and schemes and statements attributed to Mr. Hempfling and Free Enterprise Society for their truth but

9  rather to demonstrate that they are party-opponent statements and subject to injunction.  The purported

10  absence of evidence is a matter of Mr. Hempfling's making for which he will be sanctioned to support

11  the Government's requested injunctive relief.  Mr. Hempfling's claims that the Government fails to

12  follow rules and provide discovery fall on deaf ears given Mr. Hempfling's continuing obstruction and

13  failure to raise substantive disputes with the Government's requested relief.

14  **Failure To Participate In Discovery**

15  F.R.Civ.P. 37(d)(1)(A) empowers a court to "order sanctions" if a party "fails, after being served

16  with proper notice, to appear for that person's deposition" or fails to serve answers to interrogatories and

17  document requests.  Such failure "is not excused on the ground that the discovery sought was

18  objectionable, unless the party failing to act has a pending motion for a protective order under Rule

19  26(c)."  F.R.Civ.P. 37(d)(2).  Sanctions may include those provided in F.R.Civ.P. 37(b)(2)(A)(i)-(vi).

20  F.R.Civ.P. 37(d)(3).

21  A party who fails to appear for a deposition is subject to sanctions even in the absence of a prior

22  order.  F.R.Civ.P. 37(d); *Hilao v. Estate of Marcos*, 103 F.3d 762, 764-765 (9th Cir. 1996) (unexplained

23  failure to appear at deposition in contempt proceeding justified sanction deeming allegations to be

24  established); *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 947 (9th Cir. 1993).

25  **Discovery Sanctions**

26  Under F.R.Civ.P. 37(b)(2), if a party "fails to obey an order to provide or permit discovery" a

27  court "may issue further and just orders," including to :

28  1.    Direct as established matters embraced in the order or other designated facts;

8

2.      Prohibit the disobedient party to support or oppose designated claims or defenses;

3.      Prohibit the disobedient party from introducing designated matters in evidence;

4.      Strike pleadings in whole or part;

5.      Stay further proceedings until an order is obeyed;

6.      Dismiss an action or proceeding in whole or part;

7.      Render a default judgment against the disobedient party; or

8.      Treat as contempt of court the failure to obey an order (except an order to submit to a mental or physical examination).

F.R.Civ.P. 37 authorizes a district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules.  *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778 (1976); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *United States v. Sumitomo Marine & Fire Insurance Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980).

Although the central factor to a F.R.Civ.P. 37(b)(2) sanction is "justice," *Valley Engineers, Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998), *cert. denied*, 526 U.S. 1064, 119 S.Ct. 1455 (1999), the sanction "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery."  *Insurance Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 707, 102 S.Ct. 2099 (1982).  The Ninth Circuit Court of Appeals has explained the need for F.R.Civ.P. 37(b)(2) sanctions:

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents.  It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

*G-K Properties v. Redevelopment Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978).

"Where it is determined that counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders, it is within the discretion of the trial court to dismiss the action or to render judgment by default against the party responsible for noncompliance."  *G-K Properties*, 577 F.2d at 647.  "Where the drastic sanctions of dismissal or default are imposed . . . the losing party's non-compliance must be

9

due to willfulness, fault or bad faith." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993);

*Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985). "[D]isobedient conduct

not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad

faith, or fault." *Henry*, 983 F.2d at 948 (quoting *Fjelstad*, 762 F.2d at 1341.) A single willful violation

may suffice depending on the circumstances. *Valley Engineers*, 158 F.3d at 1056.

In *National Hockey League*, 427 U.S. at 643, 96 S.Ct. 2778, the United States Supreme Court

explained the rationale for severe F.R.Civ.P. 37(b)(2) sanctions:

> . . . as in other areas of the law, the most severe in the spectrum of sanctions provided by
> statute or rule must be available to the District Court in appropriate cases, not merely to
> penalize those whose conduct may be deemed to warrant such a sanction, but to deter
> those who might be tempted to such conduct in the absence of such deterrent.

Nonetheless, sanctions which interfere with "a litigant's claim or defenses violate due process when

imposed merely for punishment of an infraction that did not threaten to interfere with the rightful

decision of the case." *Wyle*, 709 F.2d at 591.

Dismissal and default judgment are authorized only in "extreme circumstances." *See Fjelstad*,

762 F.2d at 1338. "So, too, are orders taking the plaintiff's allegations as established and awarding

judgment to the plaintiff on that basis." *United States v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 603

(9th Cir. 1988). Terminating sanctions are appropriate where a "pattern of deception and discovery abuse

made it impossible" for the district court to conduct a trial "with any reasonable assurance that the truth

would be available." *See Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 352 (9th

Cir. 1995). A terminating sanction under Rule 37(d) is proper "for a serious or total failure to respond

to discovery even without a prior order." *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981). To

determine whether to impose a severe sanction of dismissal or default, a court considers:

> 1.   The public's interest in expeditious resolution of litigation;
>
> 2.   The court's need to manage its docket;
>
> 3.   The risk of prejudice to the party seeking sanctions;
>
> 4.   The public policy favoring disposition of cases on their merits; and
>
> 5.   The availability of less drastic sanctions.

*Valley Engineers*, 158 F.3d at1057; *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996); *Henry,* 983

F.2d at 948; *Kahaluu Constr.*, 857 F.2d at 603; *Thompson v. Housing Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 112 (1986).

"What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" *Valley Engineers,* 158 F.3d at 1057 (quoting *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1019 (1991)).  Prejudice arises when the ability to go to trial of the party seeking F.R.Civ.P. 37(b)(2) sanctions is impaired. *Adriana International*, 913 F.2d at 1412.  "Failure to produce documents as ordered, however, is considered sufficient prejudice. . . . [C]ontinuing refusal to comply with court-ordered production of documents constitutes interference with the rightful decision of the case." *Adriana International*, 913 F.2d at 1412. However, delay alone does not warrant a terminating sanction. *See Kahaluu Constr.*, 857 F.2d at 604; *Mir v. Fosburg*, 706 F.2d 916, 919, n. 2 (9th Cir. 1983).

A three-part analysis determines whether a court "properly considered the adequacy of less drastic sanctions: (1) did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inappropriate, (2) did the court implement alternative sanctions before ordering dismissal, and (3) did the court warn the party of the possibility of dismissal before actually ordering dismissal?"  *Adriana International*, 913 F.2d at 1412-1413.  "But despite all this elaboration of factors, we have said that it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." *Valley Engineers*, 158 F.3d at 1057.

With these standards in mind, this Court turns to the Government's grounds to seek a terminating sanction.

The Government argues that Mr. Hempfling delayed this action's progress by eight months with his "frivolous interlocutory appeal from denial of his second motion to dismiss" and caused further delay with his second interlocutory appeal of the jury demand strike in a case seeking merely injunctive relief. The Government notes that Mr. Hempfling unreasonably asserted his second interlocutory appeal deprived this Court of jurisdiction to avoid responding to the Government's discovery and continued to assert such "bogus" argument to oppose the Government's motion to compel. The Government points to Mr. Hempfling's improper Fifth Amendment objection to the Government's discovery after Judge

11

1  Snyder ordered Mr. Hempfling to respond and advised that Mr. Hempfling had waived objections. The

2  Government points to Mr. Hempfling's willful failure to attend his January 31, 2008 deposition and

3  production of only one document – Free Enterprise Society's Catalog #10. The Government contends

4  that Mr. Hempfling's conduct has "resulted in a total failure of discovery that has prevented the United

5  States from developing this case for trial." The Government concludes that a sanction lesser than default

6  judgment will not "restore the integrity of the discovery process."

7       The Government is correct – Mr. Hempfling's conduct has been blatantly egregious. This Court

8  does not take seriously Mr. Hempfling's comment that "the Government waited until the last minute to

9  engage in discovery and when faced with Hempfling's objections . . . panicked and went to this Court

10  to resolve their self made problem." Mr. Hempfling has engaged in delay tactics and subterfuge to

11  thwart the Government's legitimate discovery and in turn, pursuit of its claims. Mr. Hempfling filed two

12  meritless interlocutory appeals as a platform to claim frivolously this Court's lack of jurisdiction and

13  "to maintain a posture of non-acquiescence to the discovery requests." At a minimum, Mr. Hempfling

14  has toyed with Judge Snyder's discovery orders to amount to disobedience of them. Despite waiving

15  objections and Judge Snyder's findings of waiver, Mr. Hempfling continued to assert meritless

16  objections to attempt invalidly to avoid the Government's discovery. The limited information Mr.

17  Hempfling provided the Government, after he was ordered to do so, was charitably vague and confusing.

18  As to specific tax avoidance packages sought by the Government, Mr. Hempfling played games with

19  his responses "to the extent they exist, which defendant neither admits or denies." The ultimate game

20  playing was evidenced by his deposition, including failure to appear followed by failure of his counsel

21  to attend to preclude it prior to the non-expert discovery cutoff.

22       Quite simply, Mr. Hempfling acted willfully and in bad faith to comply with discovery rules and

23  orders to avoid disposition of this action. None of the delay or resulting prejudice to the Government

24  was outside Mr. Hempfling's control. Mr. Hempfling has chosen a pattern of gamesmanship and

25  deception to obstruct rightful decision of this action. Contrary to Mr. Hempfling assertions, the

26  Government's complaints are not based on "deceit and misrepresentations."

27       The public policy factors enumerated above justify default judgment. Mr. Hempfling's

28  disobedience and mockery of discovery plague this Court and the Government and resolution of this

action on the merits with unjustified delay and Court intervention into basic discovery.  Mr. Hempfling's obstruction has diverted Judge Snyder and this Court's attention from other matters and thwarted management of this Court's docket and unnecessarily added to the heavy caseload burdens of Judge Snyder and this Court.  The Government's prejudice continues with its inability to conduct meaningful discovery to pursue its claims.  This Court's January 4, 2008 order admonished Mr. Hempfling that this "Court will not allow Mr. Hempfling to use such tactics to avoid cooperating with the Government's discovery requests and to delay further this 2½ year old litigation."  Such admonishment mitigates the policy of disposition of cases on their merits, especially after the Ninth Circuit dismissed Mr. Hempfling's appeals out of hand.  In light of Mr. Hempfling's repeated and willful failure to cooperate in basic discovery, even after ordered to do so, less drastic sanctions would serve no purpose other than to reward Mr. Hempfling's game playing and to promote delay and the Government's prejudice.  Like the Government, this Court is unconvinced that lesser sanctions will provoke Mr. Hempfling to fulfill his discovery obligations and in turn a rightful decision on the merits of the Government's claims.  No lesser sanction could return the Government to a position had Mr. Hempfling cooperated in discovery given Mr. Hempfling's history and pattern of grossly insufficient discovery responses rendering them non-responsive.  Mr. Hempfling has chosen gamesmanship over a legitimate attempt to defend the Government's claims.  Mr. Hempfling must face the consequences of his conduct – default judgment.

## Tax Scheme Injunction

Having found the Government is entitled to a terminating sanction, this Court turns its attention to injunctive relief for the Government.  The Government seeks to permanently enjoin Mr. Hempfling to sell the W4 Alternative Withholding Package, IRS Lien and Levy Package, Reliance 2000 Program, and 16th Amendment Reliance Package and seeks information regarding purchasers of the packages.  26 U.S.C. § 7408(a), (b) and (c)[2] empowers a court to enjoin conduct subject to penalty under sections 6700 and 6701 to prevent recurrence of such conduct.  Section 7408(b) also entitles a court to enjoin "any other activity subject to penalty" under U.S. Code Title 26.  Section 6700 penalizes a person who organizes "a partnership or other entity," "investment plan or arrangement," or "any other plan or

---

[2]        Unless otherwise noted, all further statutory references will be to the Internal Revenue Code, Title 26 of the U.S. Code.

13

arrangement" and makes or furnishes a statement about tax consequences by participating in the plan or arrangement "which the person knows or has reason to know is false or fraudulent as to any material matter." In sum, section 7408(a) authorizes the Government to seek an injunction on the grounds that the defendant has engaged in conduct subject to penalty under section 6700. If a district court finds that the defendant has engaged in such conduct and that injunctive relief is appropriate to prevent its recurrence, the court may enjoin the defendant from engaging in it or in any other activity subject to penalty under section 6700. 26 U.S.C. § 7408(b); *United States v. White*, 769 F.2d 511, 514-515 (8th Cir. 1985). "Congress designed section 6700 as a 'penalty provision specifically directed toward promoters of abusive tax shelters *and other abusive tax avoidance schemes.*'" *White*, 769 F.2d at 515 (italics in original.)

" 'When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.' " *United States v. Buttorff*, 761 F.2d 1056, 1059 (5th Cir. 1985) (citing *Donovan v. Brown Equipment & Service Tools, Inc.*, 666 F.2d 148, 157 (5th Cir.1982)). To obtain an injunction under sections 6700 and 7408, the Government must prove:

1. Defendant organized or sold, or participated in the organization or sale of, an entity, plan or arrangement;

2. Defendant made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan or arrangement;

3. Defendant knew or had reason to know that the statements were false or fraudulent;

4. The false or fraudulent statements pertained to a material matter; and

5. An injunction is necessary to prevent recurrence of this conduct.

*United States v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir. 2000).

This Court will review such factors although Mr. Hempfling fails to address them.

### Organization Or Sell Of A Plan Or Arrangement

The Government argues that advertisements on Free Enterprise Society's website demonstrate that Mr. Hempfling sells a plan or arrangement subject to section 6700. The Government contends that Mr. Hempfling's sales of materials are a section 6700(a)(1)(a) "plan or arrangement" because the

14

materials "falsely tell" customers that they are not required to file income tax returns and pay taxes and that they can purchase a legal defense to not filing returns or paying tax.  The Government points to *United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000), where the Seventh Circuit Court of Appeals addressed a "De-Taxing America Program" which "assured readers that the federal government is without authority to tax them and that by following the instructions outlined in the Program individuals can legally refuse to pay federal income and social security tax."  The Seventh Circuit concluded that the sale of the program to 55 customers "is the sale of an interest in a plan that constitutes a tax shelter as defined by § 6700(a)(1)(B)."

### Tax Benefit Statements

"Section 6700 penalizes any person who makes statements regarding tax benefits of an arrangement organized or sold by him which he knows or has reason to know are false or fraudulent as to any material matter." *United States v. Buttorff*, 761 F.2d 1056, 1059 (5th Cir. 1985).  The Government attributes the following as false or fraudulent statements in Mr. Hempfling's materials, including the Reliance 2000 and W4 Alternative Withholding packages and seminars:

1.   "There is No Law that Requires and Individual to file income tax returns."

2.   "The income tax has never been anything but voluntary."

3.   "Over 1500 Reasons Why It May Not Be A Good Idea To File INCOME Tax Returns . . . The Choice Is Yours."

4.   "IRS Liens and Levies Are Unenforceable."

5.   "More Proof that the W4 Form is an invalid form and its use cannot be Compelled!"

6.   "California Legislative Intent Never Intended to Tax Labor on a Working man's wage. Learn what it did intend."

7.   "The Sixteenth amendment was not ratified."

The Government further notes that the Free Enterprise Society website states:

One of the IRS secrets is the fact that the W4 form has very limited use.  If you are an American you should be using a statement instead.  This can mean more take home pay as this procedure stops the federal withholding from you paycheck!  Package includes all necessary forms and instructions for its use.

The Government attributes the four-step Reliance 2000 Program to incite and assist customers

"to commit willful failure to file and tax evasion."  The Government points to Free Enterprise Society legal defense director Mr. Hill's seminar statement to teach customers about "bullet proofing" themselves against the IRS.  At the seminar, Mr. Hempfling offered the Reliance 2000 Package as a "failure-to-win kit."  For non-filing clients, Mr. Hempfling noted that "[t]his is the minimum, if you're a non-filer, we'd like you to do."

The Government notes that the Reliance 2000 program is marketed to invoke the defense in *United States v. Cheek*, 498 U.S. 192, 111 S.Ct. 604 (1991), that an honest, good faith belief that tax payment or tax return filing was required defeated a "willfulness" finding.  The Government argues that the Reliance 2000 Program is a packaged "*Cheek* defense predicated on teaching customers how to hoodwink a jury."  The Government points to the Reliance 2000 Package's first step to buy and read the two-volume *The Law That Never Was*, which Mr. Hempfling sells at his seminars for $50-$80.  According to the Government, the books "falsely conclude that the Sixteenth Amendment was never ratified" and that Mr. Hempfling stresses that "understanding and being able to argue that the Sixteenth Amendment was never ratified is the first step in winning a failure to file case in court."

The Government notes the Reliance 2000 Package's second step to buy the 16th Amendment Reliance Package which sells for $250 at Mr. Hempfling's seminars and on the Free Society Enterprise website.  The Government characterizes the Reliance 2000 Package as a design to present at a willful failure to file trial.  The Government attributes Mr. Hempfling to indicate that the Reliance 2000 Package is "for show" in that customers can "pretend" they relied on the package.

The Government contends that Reliance 2000 Package's remaining steps are designed to deceive jurors that the customer "honestly and actively sought to determine the legality of the Sixteenth Amendment."  The Government notes that the package's third step includes the buying for $50-$75 the *Redress of Grievance Letter Package*, which includes letters for the customer to send to the President, Senators, Congressmen, and taxing agencies to question the Sixteenth Amendment's legal status.  The package's final step, available only to Free Enterprise Society members who join its Civil Support Service, involves filing a federal lawsuit to demand whether the Sixteenth Amendment has been ratified.  The Government notes Mr. Hempfling's seminar statement:

But anyway, on your end, what we have to do is impress the jury.  This lawsuit is $150.

16

That will do the complaint for you, give you instructions on how to file it, and when the U.S. Attorney puts in his reply brief, if you'll put in a motion to dismiss, we will give you the reply brief and everything else included in that hundred and fifty. And usually they will dismiss it at that point. If they don't, so far we've just supplied the additional paperwork on anything they've asked us for. Because **we're not actually trying to win** that, because, you know, there is no law. (Bold added.)

The Government concludes that Mr. Hempfling's admission that a lawsuit will be lost demonstrates the absence of a good faith defense to tax charges.

### Scienter To Violate Section 6700

The Government argues that it need not show that Mr. Hempfling acted with subjective bad faith, that is, that he actually knew when he organized and sold the packages that they contained false and fraudulent statements concerning tax benefits availability or internal revenue law requirements. The Government holds itself to a lower standard whether a reasonable person in Mr. Hempfling's subjective position would have discovered the falsity of his statements.

Factors to determine requisite scienter to violate section 6700 include:

1.      Extent of defendant's reliance on knowledgeable professionals;

2.      Defendant's level of sophistication and education; and

3.      Defendant's familiarity with tax matters.

*Estate Preservation*, 202 F.3d at 1103.

The Government notes that Mr. Hempfling does not claim that he relied on professionals knowledgeable in tax law. The Government points out that Mr. Hempfling is a Free Enterprise Society founder and has frequently lectured on "requirements of the internal revenue law and their workings." The Government argues that Mr. Hempfling "had every reason to know that the statements about the requirements of the internal revenue laws and the Sixteenth Amendment that were contained in the products which he sold through [Free Enterprise Society] were false." The Government notes that the Internal Revenue Code and case law "leave no room to doubt that all citizens with more than minimal income are subject to tax laws." The Government cites the following:

We find it hard to understand why the long and unbroken line of cases upholding the constitutionality of the sixteenth amendment generally, *Brushaber v. Union Pacific Railroad Company*, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed.2d 493 (1916), and those specifically rejecting the argument advanced in [Mr. Benson's] *The Law That Never Was*, have not persuaded Miller and his compatriots to seek a more effective forum for

17

1  airing their attack on the federal income tax structure.

2  *Miller v. United States*, 868 F.2d 236, 241 (7th Cir. 1989); *see United States v. Dunkel*, 927 F.2d 955,

3  955 (7th Cir. 1991) ("district judges may rebuff defenses based on erroneous constitutional beliefs (such

4  as that the 16th Amendment was not properly ratified)"); *United States v. Schiff*, 876 F.2d 272, 275 (2nd

5  Cir. 1989) ("The payment of income taxes is not optional . . . and the average citizen knows that the

6  payment of income taxes is legally required.").

7  **Materiality**

8  To support materiality of Mr. Hempfling's statements, the Government points to:

9  1.  The W4 Alternative Withholding Package statement that United States citizens

10  domiciled in the United States are exempt from withholding of income and Social

11  Security taxes from their wages;

12  2.  The IRS Lien and Levy Package statement that IRS liens and levies are legally

13  unenforceable; and

14  3.  The Reliance 2000 Program statement that the Sixteenth Amendment was not ratified.

15  Section 6700 is violated by engaging in the sale of any investment plan by furnishing statements

16  about tax benefits which the person knows or has reason to know are false or fraudulent as to any

17  material matter. *United States v. Smith*, 657 F.Supp. 646, 655 (W.D. La. 1986). To prove materiality,

18  the Government "need not demonstrate that a purchasing taxpayer has relied on the purported

19  misrepresentations." *Smith*, 657 F.Supp. at 655. Rather, "a matter is considered material to the

20  arrangement 'if it would have a substantial impact on the decision making process of a reasonably

21  prudent investor.'" *United States v. Buttorff*, 761 F.2d 1056, 1062 (citing S.Rep. No. 97-494, 97th

22  Cong.2d Sess. 267 (1982), reprinted in 1982 U.S.Code Cong. & Ad.News 781, 1015).

23  **Recurrence**

24  If a defendant engages in conduct subject to a section 6700 penalty, injunctive relief is available

25  under section 7408(a) if "appropriate to prevent the recurrence of such conduct." Injunctive relief "is

26  appropriate and necessary to prevent further financial exploitation at the public's expense." *United*

27  *States v. Buttoff*, 563 F.Supp. 450, 455 (D.C. Tex. 1983). Factors to determine the likelihood of future

28  section 6700 violations and thus an injunction's need include:

18

1.   Gravity of harm caused by the offense;

2.   Extent of defendant's participation;

3.   Defendant's degree of scienter;

4.   Isolated or recurrent nature of infraction;

5.   Defendant's recognition or non-recognition of his/her culpability; and

6.   Likelihood that defendant's occupation would place him/her in a position where future violations could be anticipated.

*Estate Preservation*, 202 F.3d at 1105.

To address these factors, the Government notes that Mr. Hempfling:

1.   Is the central figure behind the Free Enterprise Society's creation, promotion and tax-fraud schemes;

2.   Operates Free Enterprise Society as a nationwide multi-level marketing scheme to sell abusive tax schemes which have been routinely rejected by courts;

3.   Continues to sell materials that falsely state the internal revenue law and Sixteenth Amendment are invalid and do not apply;

4.   Maintains that neither he nor his followers are required to file tax returns or pay taxes;

5.   Caused large-scale harm to impede tax collection;

6.   Has acknowledged neither his wrongful conduct nor an intent to cease selling his packages; and

7.   Continues to display "a long-standing antipathy to the federal tax laws and the Sixteenth Amendment that places him in a position where future violations of IRC § 6700 are inevitable."

Mr. Hempfling neither addresses the factors for an injunction under sections 6700 and 7408 nor opposes the Government's grounds for such injunction. As such and in light of the terminating sanction, the Government's points are considered uncontested to satisfy the elements for sections 6700 and 7408 injunctive relief. The Government's positions on the injunctive relief are entitled to deference to fulfill statutory purposes to eliminate abusive tax avoidance schemes.

/ / /

19

**Section 7402(a) Injunction**

The Government argues that section 7402 injunction relief will properly prevent Mr. Hempfling's interference with tax enforcement and "bilk[ing] money from Hempfling's customers and pav[ing] the way for them to become illegal non-filers." Section 7402(a) authorizes an injunction as "necessary or appropriate for the enforcement of the internal revenue laws." Section 7402 demonstrates "congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957). Courts have recognized section 7402's broad powers:

> . . . there need not be a showing that a party has violated a particular Internal Revenue Code section in order for an injunction to issue. The language of § 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws. *See United States v. First National Bank*, 568 F.2d 853, 855-56 (2d Cir.1977); *Brody v. United States*, 243 F.2d 378, 384 (1st Cir.1957). It has been used to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute. *See United States v. Ekblad*, 732 F.2d 562 (7th Cir.1984) (§ 7402 used to enjoin individual's harassment of IRS agents designed to hinder their effectiveness); *United States v. Hart*, 701 F.2d 749 (8th Cir.1983) (same); *United States v. VanDyke*, 568 F.Supp. 820 (D.Or.1983) (same). Furthermore, the statute has been relied upon to enjoin activities of third parties that encourage taxpayers to make fraudulent claims. *United States v. Landsberger*, 692 F.2d 501 (8th Cir.1982); *United States v. May*, 555 F.Supp. 1008 (E.D.Mich.1983).

*United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1748 (1985).

Similar to injunctive relief under sections 6700 and 7408, Mr. Hempfling fails to challenge the merits of section 7402(a) injunctive relief of which the Government is deserving to enforce internal revenue laws. Section 7402(a) further supports the Government's requested injunctive relief.

**PERMANENT INJUNCTION ORDER**

For the reasons discussed above, this Court permanently ENJOINS defendant Steven Hempfling, d/b/a Free Enterprise Society, and all those in active concert or participation with Steven Hempling to:

1.     Promote, organize or sell the "W4 Alternative Withholding Package," "IRS Lien and Levy Package," "Reliance 2000 Program," and/or "16th Amendment Reliance Package," which are abusive tax shelters, or arrangements that advise or encourage attempt to evade assessment or collection of federal tax:

2.     Promote, organize or sell (or to assist therein) any other abusive tax shelter, plan or

arrangement that incites an attempt to violate the internal revenue laws, to evade unlawfully the assessment or collection of federal tax liabilities, or to claim unlawfully improper tax refunds;

3.   Make false statements about excludability of income, or securing any tax benefit by reason of participating in such tax shelters, plans or arrangements;

4.   Engage in any other activity subject to penalty under Internal Revenue Code § 6700; and

5.   Engage in other, similar conduct that substantially interferes with proper administration of internal revenue laws.

## **FURTHER ORDERS**

In addition, this Court ORDERS defendant Steven Hempfling, no later than March 31, 2008, to:

6.   Deliver (by United States mail, and, if an e-mail address is known, by electronic mail) at his expense a copy of this permanent injunction order to everyone who purchased the "W4 Alternative Withholding Package," "IRS Lien and Levy Package," "Reliance 2000 Program," and/or "16th Amendment Reliance Package";

7.   Serve the Government a complete list of everyone who purchased from defendant Steven Hempfling a "W4 Alternative Withholding Package," "IRS Lien and Levy Package," "Reliance 2000 Program," and/or "16th Amendment Reliance Package" and to provide the Government the purchasers' names, mailing addresses, e-mail addresses and Social Security numbers;

8.   Remove from the website www.FreeEnterpriseSociety.com all references to "W4 Alternative Withholding Package," "IRS Lien and Levy Package," "Reliance 2000 Program," and/or "16th Amendment Reliance Package"; and

9.   Post, in not less than 12-point type at the top of the first page of www.FreeEnterpriseSocity.com a copy of this permanent injunction order.

This Court further ORDERS defendant Steven Hempfling, no later than April 14, 2008, to file and serve his affidavit to detail his compliance with the requirements of subparagraphs 6-9 above.

/ / /

/ / /

1        This Court DIRECTS the clerk to enter judgment in favor of plaintiff United States of America

2   and against defendant Steven Hempfling.

3        IT IS SO ORDERED.

4   **Dated:    March 12, 2008              /s/ Lawrence J. O'Neill**
                                  UNITED STATES DISTRICT JUDGE

22